UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANTHONY ADSIT<br>   *Plaintiff*,<br><br>v.<br><br>RELIANCE STANDARD LIFE INSURANCE<br>   *Defendant.* | §<br>§<br>§<br>§<br>§<br>§    C.A. NO. 4:19-cv-3738<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Anthony Adsit ("Plaintiff"), by and through his undersigned attorneys, files this Complaint against Defendant, Reliance Standard Life Insurance Company.

## THE PARTIES

1. Plaintiff Anthony Adsit is a citizen of the State of Texas. He is 18 years old and lives within the Southern District of Texas, Houston Division, in Deer Park, Texas.

2. Defendant Reliance Standard Life Insurance Company ("Reliance Standard") is a life insurance company organized under the laws of the State of Pennsylvania and maintains a principal place of business in Philadelphia, Pennsylvania. Reliance Standard is a citizen of the State of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1332(a)(2), diversity of citizenship is present as Plaintiff is a citizen of the State of Texas and Defendant is a citizen of Pennsylvania. As more fully set out below, the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

4. This Court has proper venue of this declaratory judgment action pursuant to 28 U.S.C. § 1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

5. The life insurance policy at issue was sold in the Southern District of Texas to the Plaintiff's mother and she resided in the Southern District of Texas at the time the policy was sold to her.

6. All life insurance premiums due on the life insurance policy at issue were paid from the Southern District of Texas by the Plaintiff's mother.

7. The beneficiary designation of the life insurance proceeds (the Plaintiff) was made by the Plaintiff's mother in the Southern District of Texas.

8. The Plaintiff's mother died in the Southern District of Texas.

9. The Plaintiff made a claim to the Defendant for the benefits under the Policy from his residence in the Southern District of Texas.

10. The Defendant rejected the Plaintiff's claim for benefits via letter sent to the Plaintiff's residence in the Southern District of Texas.

11. Plaintiff seeks declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 and 2202, which grant the United States District courts jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

## NATURE OF THE CASE

12. This case involves the incorrect and legally insupportable payment of $162,500 in life insurance benefits by Reliant Standard Life Insurance Company to the Plaintiff's father.

13. The Plaintiff—not the Plaintiff's father—was the rightful beneficiary of the $162,500 in life insurance benefits at issue.

14. Instead of paying the Plaintiff (or otherwise safeguarding the money by depositing it into a court registry or structured settlement until such time as the Plaintiff turned at least 18 years of age), Defendant incorrectly paid the entirety of the $162,500 in life insurance proceeds to the Plaintiff's father while the Plaintiff was a minor child.

## FACTUAL BACKGROUND

15. Eric Adsit and Tracy Adsit, deceased, were married on August 21, 1999.

16. Plaintiff was born on XX-XX-2001.

17. Plaintiff is currently 18 years old.

18. Plaintiff is the son and only child of his father, Mr. Eric Adsit and his mother, Ms. Tracy Adsit, deceased.

19. The marriage of Eric Adsit and Tracy Adsit ended in divorce in Harris County, Texas on December 5, 2003.

20. Tracy Adsit was killed by a drunk driver within the Southern District of Texas on December 29, 2009.

21. Tracy Adsit was 28 years old when she died.

22. Prior to her death, Tracy Adsit worked full-time as a secretary in the Conroe Independent School District just north of Houston, Texas.

23. Tracy Adsit started working for the Conroe Independent School District on August 19, 2009, and she earned $9.67 per hour at her job. **Doc. 1-1** at part A.

24. On September 1, 2009, an accidental death & dismemberment insurance policy "VAR 053228" ("the Policy") sold by Defendant Reliance Standard Life Insurance Company to Tracy Adsit went into effect insuring the life and body of Tracy Adsit against accidental death & dismemberment. **Doc 1-1** at part A.

25. The premiums for the Policy were paid through 12/31/2009. **Doc. 1-1** at part A.

26. The premiums for the Policy were deducted from Tracy Adsit's employee paycheck.

27. The total amount of coverage by Defendant was comprised of $130,000 for accidental death benefit, $26,000 for a seat belt benefit, and $6,500 for an air bag benefit, for a total of $162,500.

28. At the time the Policy was purchased, Plaintiff was designated as the sole beneficiary of the Policy by his mother, Tracy Adsit. **Doc. 1-1** at part C.

29. After the Plaintiff's mother died, the Defendant sent a letter dated May 7, 2010 addressed to "Guardian of Anthony Adsit" in Deer Park,

Texas requesting "Certified Letters of Guardianship appointing the Guardian (or Conservator) of the minor beneficiary Anthony Adsit's Estate (or Property)." **Doc. 1-2**.

30. The Defendant's letter dated May 7, 2010 further states "VERY IMPORTANT: Please note that if we do not receive the Certified Letters of Guardianship appointing the guardian of the minor beneficiary's Estate with [*sic*] 45 days from the date of this letter (and we have not been notified that these papers are in the process of being secured), we will establish a Supplementary Contract on behalf of the minor beneficiary and hold the proceeds at interest until the beneficiary attains the legal age of majority. The contract amount may also be paid to the court appointed guardian of the minor's estate upon written request." **Doc. 1-2.**

31. On June 7, 2010, the Defendant sent a letter identical in substance to the letter the Defendant sent on May 7, 2010. **Doc. 1-3**.

32. On July 7, 2010, the Defendant sent a letter identical in substance to the May 7, 2010. **Doc. 1-4.**

33. More than 10 months after the Defendant's May 10, 2010 letter advising that if "Certified Letters of Guardianship appointing the guardian of the minor beneficiary's Estate with [*sic*] 45 days" were

6

not received or in the process of being secured "we will establish a Supplementary Contract on behalf of the minor beneficiary and hold the proceeds at interest until the beneficiary attains the legal age of majority", the Plaintiff's father, Eric Adsit, wrote a letter dated March 21, 2011 to Defendant and made a claim for the life insurance benefits under the Policy. **Doc. 1-5**.

34. In the March 21, 2011 letter sent by the Plaintiff's father to the Defendant, the Plaintiff's father stated, in relevant part, "Attached is…the Certified Court Document that shows I, Eric Adsit, am the Legal Guardian to Anthony Adsit and all of his estate (pages 3-5)." **Doc. 1-5**.

35. The "Certified Court Document" sent to the Defendant by Eric Adsit on March 21, 2011 was dated March 5, 2009, and was entitled "Order in Suit to Modify Parent-Child Relationship."

36. The "Order in Suit to Modify Parent-Child Relationship" was issued in Harris County, Texas by the 245th District Court of Harris County, Texas related to a case styled as Cause No. 2002-60295; "In the Interest of Anthony John Adsit, a child". **Doc. 1-6**.

37. Page 3 of 39 of the March 5, 2009 "Order in Suit to Modify Parent-Child Relationship" establishes that Eric Adsit was granted, as a joint

managing conservator, "the right to manage the estate of the child ***to the extent the estate has been created*** by the parent or the parent's family." **Doc. 1-6** at 3, § 9 (emphasis added).

38. Further, pages 4-5 of 39 of the March 5, 2009 "Order in Suit to Modify Parent-Child Relationship" provide that Eric Adsit, as a parent joint managing conservator, shall have "the exclusive duty to manage the estate of the child ***to the extent the estate has been created*** by community property or the joint property of the parents." **Doc. 1-6**, at 4-5, § 10 (emphasis added).

39. As a matter of law, the above quoted language within the March 5, 2009 "Order in Suit to Modify Parent-Child Relationship" does not create an estate or conservatorship in favor of the Plaintiff. Rather, it simply nominates Eric Adsit as the conservator of the Plaintiff's estate, if and when such a conservatorship for the Plaintiff's estate was ever created while the Plaintiff was a minor.

40. No conservatorship of the Plaintiff's estate was ever created in favor of the Plaintiff by the Plaintiff's father or anyone else.

41. On April 25, 2011, the Defendant sent three checks totaling $162,500 to the Plaintiff's father made payable to "Eric Adsit, Conservator of the Estate of Anthony Adsit, a Minor". **Doc. 1-7**.

8

42. On July 10, 2019, the Plaintiff wrote to the Defendant ahead of his 18th birthday and requested all of the life insurance proceeds at issue, including interest, to be released to him on his 18th birthday. **Doc. 1-8.**

43. On July 25, 2019, the Defendant wrote back to the Plaintiff in response to the Plaintiff's July 10, 2019 letter and stated "Please be advise [*sic*] the claim was paid to the Conservator of your Estate. Please contact the conservator regarding payment." **Doc. 1-9.**

44. On July 30, 2019, the Plaintiff wrote back to the Defendant and informed the Defendant, in relevant part, that "Please be advised that I do not have and, to my knowledge, have never had a conservator." **Doc. 1-10.**

45. The undersigned Plaintiff's counsel wrote to the Plaintiff's father on August 30, 2019 to see what became of the $162,500 policy proceeds at issue. *See* **Doc. 1-11**.

46. The Plaintiff's father responded to Plaintiff's counsel on September 10, 2019 via letter. *See* **Doc. 1-12.**

47. In his letter dated September 10, 2019, the Plaintiff's father states "There were no judicial decisions and/or assignments of

Conservatorship of Estate for Anthony Adsit in regards to the checks sent by Reliance Standard." **Doc. 1-12**.

48. In his letter dated September 10, 2019, the Plaintiff's father also states "There were no court orders planning for expenditure of the checks written by Reliance Standard." **Doc. 1-12**.

49. In his letter dated September 10, 2019, the Plaintiff's father also states that "The money your client is requesting was used for and/or spent by your client as a Tennessee resident." **Doc. 1-12.**

50. The Plaintiff, who was a minor child when the life insurance proceeds at issue were paid to his father, did not personally spend any of the life insurance proceeds at issue in this lawsuit.

51. The Plaintiff, who was a minor child when the life insurance proceeds at issue were paid to his father, had no access to any of the life insurance proceeds at issue in this lawsuit.

52. In his letter dated September 10, 2019, the Plaintiff's father also states that "Anthony Adsit and I spoke prior to any and all funds being spent with mutual agreeance here in the State of Tennessee." **Doc. 1-12.**

53. There was no such "mutual agreeance" between the Plaintiff and his father as referenced in his father's letter dated September 10, 2019.

54. Even if there was "mutual agreeance" as alleged in his father's letter dated September 10, 2019, any "mutual agreeance" was made while the Plaintiff was a minor child, and is thus, legally unenforceable and not binding upon the Plaintiff.

## BREACH OF CONTRACT

55. Plaintiff incorporates paragraphs 1-54 as if set forth fully herein.

56. Plaintiff is the sole beneficiary of the Policy issued by Defendant.

57. Prior to the death of Plaintiff's mother, all premiums were timely paid, and paid in full, for the Policy.

58. After the Plaintiff's mother died, Defendant breached the terms of the Policy (a contract) by wrongfully paying the Policy proceeds to someone who was not the beneficiary of the Policy.

59. The Policy proceeds were improperly paid to the Plaintiff's father without first ensuring that the Plaintiff's father was actually the conservator of an estate set up for the benefit of the Plaintiff.

60. There was no conservatorship for any estate set up or created for the benefit of the Plaintiff.

61. The Defendant should not have paid the Plaintiff's father without first verifying that the Plaintiff's father held the legal authority to receive life insurance proceeds at issue.

62. The life insurance proceeds should have been paid to the Plaintiff via deposit into the registry of a court until the Plaintiff turned 18 years old, a structured annuity until the Plaintiff turned 18 years old, or with the creation of a conservatorship of the Plaintiff's estate so that annual accountings and judicial oversight could monitor any spending for these life insurance proceeds and ensure that they were used only in the best interests of the Plaintiff.

63. Plaintiff has been damaged in at least the amount of $162,500, plus loss of interest and/or investment income that would have accrued from the time the Policy benefits were wrongfully paid to the Plaintiff's father until the Plaintiff's 18th birthday or longer.

64. Plaintiff has also incurred attorney's fees, and seeks pre-judgment interest, post-judgment interest, costs of court and any and all other such specific and general relief to which he may be entitled for Defendant's breach of contract.

### VIOLATION OF PROMPT PAYMENT OF CLAIMS STATUTE

65. Plaintiff incorporates paragraphs 1-54 as if set forth fully herein.

66. The Plaintiff made a demand for payment of $162,500 in life insurance proceeds to the Defendant on July 10, 2019.  **Doc. 1-8.**

67. The Defendant responded on July 25, 2019 via letter and stated that "Please be advise [*sic*] the claim was paid to the Conservator of your Estate. Please contact the conservator regarding payment." **Doc. 1-9.**

68. The Defendant received all items, statements, and forms reasonably requested and required under Texas Insurance Code § 542.055, but nonetheless delayed payment of the claim (and indeed, outright denied it) for more than 60 days.

69. The Defendant's conduct constitutes a violation of Section 542.058 of the Texas Insurance Code.

70. Plaintiff, therefore, in addition to his claim for damages, is entitled to 18% interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**BAD FAITH/VIOLATIONS OF DECEPTIVE TRADE PRACTICES ACT**

71. Plaintiff incorporates paragraphs 1-54 as if set forth fully herein.

72. As a life insurance company selling life insurance policies in the State of Texas and within the Southern District of Texas, Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

73. Defendant violated Section 541.051 of the Texas Insurance Code by making statements that misrepresented to the Plaintiff that it had paid

the claim to the conservator of the Plaintiff's estate when it knew no estate has ever been set up for the Plaintiff.

74. The Defendant knew at the time it made the statement that the Defendant was never provided any documents by the Plaintiff's father establishing that an estate for the Plaintiff had been created.

75. Defendant has failed to pay this claim to the proper beneficiary, and has misleadingly stated to the Plaintiff that it previously paid the claim to the Conservator of the Estate when it knew no such estate was ever established.

76. Defendant violated Section 541.060 of the Texas Insurance Code by:

(1) misrepresenting a material fact relating to coverage at issue: specifically, the statement that "Please be advise [*sic*] the claim was paid to the Conservator of your Estate" when it knew it had no documents in its possession that established the creation of an estate for the Plaintiff;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which Defendant's liability had become reasonably clear at least as of the date of July 30, 2019, when Plaintiff informed the Defendant that "Please be advised that I do not have and, to my knowledge, have never had a

conservator" (**Doc. 1-10**) if not well sooner such as 45 days after May 7, 2010 when the Defendant knew that it had not received any documents establishing that an estate had been created for the benefit of the Plaintiff;

(3) failing to promptly provide to the Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim, particularly when Defendant has known since at least the summer of 2010 that it had no documents provided by anyone establishing that an estate was created for the benefit of the Plaintiff;

(4) refusing to pay the claim without conducting a reasonable investigation with respect to the claim to determine why Defendant did not diligently review the documents submitted from the Plaintiff's father in March 2011 (**Doc. 1-6**) to verify whether those documents actually created an estate for the benefit of the Plaintiff as the Plaintiff's father incorrectly asserted.

108. Defendant violated Section 541.061 of the Texas Insurance Code by:

(1) making an untrue statement of material fact including that "Please be advise [*sic*] the claim was paid to the Conservator of your

Estate" when Defendant knew that it had no documents establishing that an estate had ever been created for the benefit of the Plaintiff;

(2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made, including the fact that while the Plaintiff's father represented on March 21, 2011 in **Doc. 1-5** that he was the "Legal Guardian to Anthony Adsit and all of his estate" the Defendant knew that the Plaintiff's father had not provided, and indeed, has never provided, any document establishing that an estate was ever created for the benefit of the Plaintiff; and

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, such as "Please be advise [*sic*] the claim was paid to the Conservator of your Estate" when the Defendant knew it had no documents in its possession establishing that an estate for the benefit of the Plaintiff had ever been created.

109. At all material times hereto, Plaintiff was a consumer who was the beneficiary of insurance products and services purchased from Defendant.

110. Defendant has violated the Texas Deceptive Trade Practices Act ("DTPA") in the following respects:

    (1) Defendant, by refusing without a reasonable basis to pay benefits due and owing to Plaintiff, engaged in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)(3) in that Defendant took advantage of the Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, in violation of Chapter 541 of the Texas Insurance Code.

111. Defendant knowingly committed the acts complained of herein. As such, Plaintiff is entitled to exemplary damages, treble damages, or both pursuant to the DTPA and Texas Insurance Code § 541.152(a)–(b).

## ATTORNEYS' FEES

112. Plaintiff engaged the undersigned counsel to prosecute this lawsuit against Defendant and agreed to pay his counsel reasonable attorneys' fees and expenses through trial and any appeal.

113. Plaintiff is entitled to reasonable and necessary attorneys' fees from Defendant pursuant to Texas Civil Practice and Remedies Code §§ 38.001–38.003 because an attorney represents him, he presented the claim to Defendant, and Defendant did not tender the just amount

owed before the expiration of the thirtieth day after the claim was presented. To the extent that Plaintiff's past actions are construed to not be a presentment of claim under Texas Civil Practice & Remedies Code § 38.002(2), Defendant should consider these claims herein as a presentment of Plaintiff's claim.

114. Plaintiff is further entitled to reasonable attorneys' fees incurred in prosecuting his causes of action through trial and any appeal pursuant to §§ 541.152 and 542.060 of the Texas Insurance Code.

## DECLARATORY JUDGMENT

115. Plaintiff seeks a declaration that the Defendant paid the incorrect beneficiary, that the Plaintiff is the correct beneficiary, that no conservatorship or estate was ever set up to manage the Plaintiff's financial affairs while the Plaintiff was a minor, and that as such, the Defendant must now pay the Plaintiff the Policy proceeds in the amount of $162,500 plus interest and attorneys' fees and court costs, even if that means the Defendant must pay the Policy proceeds twice. Declaratory relief is necessary because the Defendant has already stated in response to the Plaintiff's demand for the Policy proceeds that: "Please be advise [*sic*] the claim was paid to the Conservator of

your Estate. Please contact the conservator regarding payment." **Doc. 1-9**.

## DAMAGES

115. Plaintiff seeks damages for the injuries Defendant has caused him. These damages include not only general damages, but also special damages, including exemplary damages, treble damages, consequential damages, costs, attorneys' fees, and pre- and post-judgment interest, both statutory and otherwise.

## PRAYER

For these reasons, Plaintiff prays that, upon final hearing of the case, the Court enter judgment in his favor on all claims and that he recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence and that he be awarded attorneys' fees through trial and appeal, costs of court, pre- and post-judgment interest, exemplary damages, treble damages, and such other and further relief, general or special, at law or in equity, to which he may show himself entitled.

        Respectfully submitted,

        **TERRY & THWEATT, P.C.**

By: <u>/s/ L. Lee Thweatt</u>
     L. Lee Thweatt
     Attorney In Charge
     Texas Bar No. 24008160
     Federal I.D. No. 36618
     lthweatt@terrythweatt.com
     Joseph D. Terry
     Texas Bar No.  24013618
     Federal I.D. No. 24206
     jterry@terrythweatt.com
     One Greenway Plaza, Suite 100
     Houston, Texas  77046-0102
     (713) 600-4710 Telephone
     (713) 600-4706 Telecopier

     **ATTORNEYS FOR PLAINTIFF**